[No. 855.  Decided June 15, 1893.]

LOTTIE P. ABBOTT, *Respondent*, v. JAMES WETHERBY, *Administrator of the Estate of George F. Abbott, deceased, Appellant.*

COMMUNITY PROPERTY — EARNINGS OF WIFE — GIFT BY HUSBAND
TO WIFE.

Money saved by a wife from the funds given her by her husband for household expenses does not thereby lose its community character and become her separate property.

A statement by a husband that his wife had selected certain lots; that she had always worked hard and earned a great deal of money, and that he intended the land as a home for her, cannot be construed as creating a separate estate therein by gift, when the land had been purchased with community funds.

*Appeal from Superior Court, King County.*

*W. Lair Hill*, and *Gilliam & Hill*, for appellant.

*Fred H. Peterson*, for respondent.

The opinion of the court was delivered by

DUNBAR, C. J. — Respondent and George F. Abbott were married in the State of Ohio, in 1852, and have ever since lived together as husband and wife until the death of Abbott in the State of Washington, in 1890.  At the time of the marriage respondent had no property, at least the testimony convinces us that she had none worthy of consideration; none which has been the source of any accumu-

lations.   As husband and wife, respondent and Abbott
lived together in several different states, and with varying
fortunes, until in 1883, when Abbott came to Washington,
respondent following in due course of time, since which
time this state has been her home, and was the home of her
husband until he died.   They had but little means when
they came to Washington.   The property in controversy
consists of lots 5 and 6 in block 1, of Burke's Second Addi-
tion to the city of Seattle.   On July 2, 1883, George F.
Abbott took a bond for a deed from Lyman M. Wood for
lot 6, and the south half of lot 5, and paid thereon sixty dol-
lars, the price agreed to be paid being $275, the remainder
of which was paid in small payments.   A deed was exe-
cuted and delivered to respondent by Lyman M. Wood
and wife in pursuance of this bond for a deed on the 28th
day of April, 1887, for the consideration of $450.   The
north half of lot 5 was conveyed to George F. Abbott by
Lyman M. Wood by deed dated October 11, 1888, express-
ing a consideration of $250.   August 22, 1889, George F.
Abbott and respondent executed and delivered to Cassa
Osgood, without consideration, a deed purporting to con-
vey to Mrs. Osgood the last described tract, under an
agreement between Mrs. Abbott and Mrs. Osgood that the
latter should re-convey this land to the former without con-
sideration, whenever the former should request it.   In pur-
suance of this arrangement Mrs. Osgood, on the 29th day
of March, 1890, re-conveyed this tract to respondent.   At
the time of the delivery of the deed from Mr. and Mrs. Ab-
bott to Mrs. Osgood, Mrs. Abbott furnished Mrs. Osgood
$100 to pay Mr. Abbott as a part of the consideration.
After the conveyance of lot 6 to respondent, she and her
husband deeded to the First Baptist Church a portion of
lot 6.   Afterward they entered into an agreement with
the First Baptist Church to exchange for the property in
lot 6, deeded to it, lot 1, in block 6, of Jackson Street Ad-

dition to the city of Seattle, and did afterwards make such exchange. The property exchanged with the church under said agreement, and which constituted the consideration for said conveyance, stood in the name of George F. Abbott. In July, 1888, the appellant and George F. Abbott entered into a copartnership as contractors and builders, and continued in that relation until about January, 1889. Being unable to agree upon a settlement of their copartnership affairs, they submitted their differences to arbitration, which resulted in a judgment in favor of the appellant and against Mr. Abbott in the sum of $350.63, and $14 costs, a copy of which judgment was filed and recorded in the office of the county auditor of said King county, and this suit was instituted by respondent against the appellant as administrator of the estate of the said George F. Abbott, deceased, to prevent him from administering upon the property above described, and to remove the cloud from the title to said land which she alleges the recorded judgment to be; so that it will be seen that it is necessary to determine at the outset whether the property in dispute is community property or the separate property of the respondent.

The debt upon which the judgment was based was contracted in the ordinary course of the husband's business for the benefit of the community, and is therefore a community debt. *Oregon Improvement Co. v. Sagmeister*, 4 Wash. 710 (30 Pac. Rep. 1058). Hence if the property was community property it was properly listed by the administrator, and should be made to respond to the community debt.

We must look to our statutes alone to determine what constitutes separate property. Sec. 1398, Gen. Stat., provides what property is the separate property of the wife, viz., the property and pecuniary rights of every married woman at the time of her marriage and afterwards acquired

by gift, devise or inheritance, with the issues and profits thereof. Sec. 1399 provides that all other property is community property. As we have already seen, the respondent had none of this property at the time of her marriage; she has not acquired it by devise or inheritance, and it follows that, if she has not acquired it by gift, under the provisions of § 1399 it is community property. We are unable to find anything in the record even tending to support a conclusion that the money with which the payment for this land was made was given to the respondent. The husband was industrious and so was the wife, the testimony showing that the labor of both contributed to the fund with which this property was purchased; that as members of the community they were both working for the interests of the community. The respondent's idea of a gift is illustrated by her testimony. When asked how she obtained certain money which she claims to have paid for the land, she replied:

"I obtained it in this way: He would give me money for the house, and whatever was over, was mine. He gave me money to purchase things; I used to spend part of what he gave me, and the rest of it was mine; and doing that, I very soon accumulated money."

This surplus, respondent says, she loaned to her husband when he was in need of a little ready money, and as he did not pay it back to her she takes credit for the amount which her husband paid on the purchase price on the land in question. This is, to say the least, a novel and ingenious method of attempting to convert community property into separate property. Counsel for the respondent seems to think that his client is entitled to great credit on account of her economical habits, and for being able to save something out of the bountiful provision made by the husband for the household expenses; and no doubt she should have, if the economy had been practiced in the interests of the

community which was furnishing the funds; but in this instance the beneficiary was a stranger to the community; and the encouragement of a practice working such results might lead to habits of economy so rigid that the comfort of the community would be a consideration secondary to that of the thrifty condition of the separate estate. Ordinarily, it would seem that the overplus furnished by any particular fund to meet any expenses should be returned to the fund which furnished it. We see no good reason for upsetting this well established principle in law and morals in this case. So far as the transaction with Mrs. Osgood, in which the record title was transferred from Abbott to his wife, is concerned, the same principle obtains. It was the community funds which were, through a deception practiced on Abbott, paid to him, and which it may be fairly presumed was by him again furnished to his wife to meet the current expenses of the community. And, according to respondent's own testimony, the whole object of that transaction was not to change the property from community to separate property, but to get it into such a condition that her husband could not dispose of it, which she feared he would do, and by so doing secure it for the use of the community. This is the theory which places the respondent in the most favorable light in her dealings with her husband, and the one on which we believe she acted.

It is true that Abbott stated to Mrs. Woolen and Mrs. Osgood that his wife had selected these lots, and that she had always worked hard and earned a great deal of money, and that he intended the land as a home for her; but such expressions are common with husbands who have not a thought of separate property. Most husbands are considerate enough of their wives to allow them to make a selection of their residence, and to accord to them the credit of having worked hard and helped to accumulate what they possess; but such expressions cannot be construed either as

a gift, in the sense of creating a separate estate, or as a payment for money had and received. Indeed it is hard to tell what the theory of the respondent in this case is, whether her claim is based upon a gift, or upon a debt. If upon a gift, the evidence of a gift must be clear, and it must be apparent that the husband intended to divest the community of all rights, and to set the property apart to the separate use of the wife. *Evans v. Covington*, 70 Ala. 440. If upon a debt, that transaction must be as clearly proven.

It is, however, claimed that a large portion of the funds which paid for these lots was earned by the wife, and that such earnings were her separate property under the provisions of the statute. The statute, in addition to the property described in § 1398, provides a way in which a married woman can obtain separate estate. Section 1403 provides that the earnings and accumulations of the wife and of her minor children living with her, or in her custody, while she is living separate from her husband, are the separate property of the wife. It is true that § 1402 provides that the wife may receive the wages of her personal labor; but these sections must be construed together, and thus construed we must conclude that her earnings only become her separate property while she is living separate from her husband. Any other construction would render meaningless § 1403, for if § 1402 created her earnings into a separate estate the enactment of § 1403 would have been absolutely useless, as all its provisions under this construction are embraced in § 1402. And the same reason would apply to § 480, Code Proc. While the personal earnings of a wife are exempt, it must be construed to be a statute of exemptions, and in no sense defines separate property. The statute seems to definitely distinguish the rights acquired by wives who are living with their husbands, from the rights acquired by wives who are living separate from their husbands.

The case of *Carter v. Worthington*, 2 South. Rep. 516, which is cited and relied upon by respondent, is not a parallel case with the one at bar. In that case a married woman, who had been conducting a millinery establishment before her marriage, continued the business for many years after marriage with her husband's consent, and took a conveyance of land in payment of an account for goods sold the grantor. *Held*, That such goods being purchased with the profits of the business were to be considered as accretions to her separate estate, which had already accumulated, and that the land so purchased could not be subjected to the payment of a judgment against her husband on a debt incurred before the sale of the goods to the grantor. There is no question of accretions from respondent's estate here. There was in reality no conducting of any distinct business, the husband and wife were both industrious and both no doubt added something by their labor to the common fund; the wife sometimes kept boarders, but it appears that the house and supplies were furnished by money earned by the husband. They were both doing their share; doing what is common for husbands and wives to do to prosper and to accumulate a competency for the community. It is the duty of each spouse to contribute his or her industry, energy and intelligence to the community; and it would encourage a sorry state of affairs in our domestic relations, if each one of the spouses were allowed, as seems to us to be attempted in this case, to charge the community with all the expenses of the living and expenses of the business, and credit the separate estate with the gross earnings.

Our conclusion is that the property listed by the administrator was properly listed as community property; and the judgment is, therefore, reversed, and the cause remanded to the lower court with instructions to dismiss the same at respondent's cost.

HOYT, SCOTT, STILES and ANDERS, JJ., concur.