[No. 2629.   Decided September 2, 1897.]

DORA HARRIS, *Respondent*, v. A. T. VAN DE VANTER, *Appellant.*

HUSBAND AND WIFE — SEPARATE ESTATE — INCREASE OF LIVE STOCK — ESTOPPEL — APPEAL — ERROR NOT URGED BELOW.

Under Gen. Stat., § 1397, investing the wife with a separate estate in the " rents, issues and profits " of her separate property, she is entitled to the increase of live stock belonging to her; and such increase cannot be subjected to the debts of the community although the husband may have returned the stock for taxation in his own name and may have otherwise held himself out as owner thereof, when there are no acts on the part of the wife estopping her from claiming the stock as her separate property.

Where the excessiveness of a judgment has not been called to the attention of the lower court on motion for new trial, it will not be considered on appeal.

Appeal from Superior Court, King County.—Hon. E. D. Benson, Judge. Affirmed.

*Gill, Keene & Shaw*, for appellant.
*J. T. Ronald*, and *J. C. Whitlock*, for respondent.

The opinion of the court was delivered by

Dunbar, J.—This action is brought by respondent, Dora Harris, against A. T. Van de Vanter, as sheriff of King county, for damages for the conversion of certain cattle taken by him under a writ of replevin, at the instance of one Daniel O'Leary, in an action wherein Daniel O'Leary was plaintiff, and James Harris, the husband of the plaintiff in this action, was defendant. The facts are briefly as follows: The plaintiff and James Harris were married in 1879, and in 1881, while living on a community farm, the father of the plaintiff presented her with a cow and a heifer calf, stating to her that the cow and calf and their increase should be her separate property. It seems that at the time the husband, James Harris, assented to this arrangement, the father, at the time of the gift saying, "Dora, bear in mind these are your cattle, that the increase from now on will be your separate property." The cattle levied upon and which are the subject of this action are conceded to be the increase of the cow and heifer thus donated. Some of the increase have been sold by the husband, and the money thus obtained expended on the farm and for the support of the family. The stock was maintained and cared for by both husband and wife.

The complaint, of course, alleges the property to have been the separate property of the plaintiff, while the answer denies that the property was the property of the plain-

tiff. On these issues the case went to trial and a verdict was rendered in favor of the plaintiff for $625. Upon the opening statement of the plaintiff's counsel, the defendant moved the court to dismiss the action, on the ground that from such statement it appeared that the property, for the alleged conversion of which the action was brought, was community property of the plaintiff and James Harris. This motion was denied. At the close of the testimony the defendant again moved the court to dismiss the case on the ground that the property involved was community property and that plaintiff could not maintain the action, which motion was denied.

That portion of the instruction which is objected to by the appellant is as follows:

" Gentlemen of the jury: If you believe from the evidence in this cause, and by a preponderance of the evidence, that all of this stock in question was raised from stock that was originally the separate property of Mrs. Harris, that is, if it were property donated to Mrs. Harris by her father, after her marriage, but was a gift to her, and that all of this stock was the increase of that former gift, and that it has never been commingled with the property of the community at all; and if you believe from a preponderance of the evidence further, that there was an arrangement between Mrs. Harris and her husband by which he was to keep this property and have the use of it for its feed and care, but that the increase was to remain the separate property of Mrs. Harris, then your verdict will be for Mrs. Harris, the plaintiff, for the value of these cattle at the time they were taken."

By our law (Gen. Stat., §§ 1397, 1398), either spouse is given all property acquired by "gift, devise or descent, with the rents, issues and profits thereof." Any other property is community property. It is contended by the appellant that the words " rents, issues and profits " apply only to real property and tenements, and that, in any

event, they do not embrace the increase of live stock, and some cases are cited from Texas and Louisiana to sustain this contention. These cases are not in point, for the statutes in those states provide especially that such increase shall be common property. It is true that in *Howard v. York*, 20 Tex. 672, the court say:

" The increase of cattle is an acquisition of property not specified in the said second section, and is therefore made by the statute community property."

Sec. 2 was to the effect that "All property both real and personal, owned or claimed by her before marriage, and that acquired afterwards by gift, devise or descent," should be separate property of the wife. And the inference of the court was that the increase of cattle would not fall within that provision. But there was no occasion for any expression of opinion by the court on that subject, for the statute specially provided that such increase should be community property. We think the instruction complained of in this case correctly stated the law, for our statute is broader than the original Texas statute, and especially makes the " rents, issues and profits " separate property, and, while in a strictly etymological sense, it might be that neither of the words, " rents, issues or profits," would embrace the increase of cattle, yet to give this narrow and restricted construction to the statute would lead to results inconsistent with the evident intention of the legislature, which passed the community property law. It was the evident intention of the legislature that the wife should have the fruits of her separate estate, in whatever form they might come.

In *Marx v. Lange*, 61 Tex. 547, the rule is expressed as follows:

" It matters not how many mutations the separate money of the wife may have undergone, how often it has been

invested in personal or real property; how often it has been loaned, collected and reinvested; as long as the substance thereof can be traced and identified as the result of the money, it is her separate property."

Under the constitutional provision of California that "All the property, both real and personal, of the wife, owned or claimed by her before the marriage, and that acquired afterwards by gift, devise or descent shall be her separate property," a statute which provided that the rents and profits of the separate property of either husband or wife should be deemed common property was held to be in conflict with the provisions of the constitution above set forth, the court holding that the legislature had not the constitutional power to say that the fruits of the property of the wife should be taken from her and given to the husband or his creditors. *George v. Ransom*, 15 Cal. 324.

In *Lewis v. Johns*, 24 Cal. 98 (85 Am. Dec. 49), the court say:

"All property which can be shown to belong to the separate estate of the wife, by satisfactory testimony, whether the same be real, personal, or mixed, and all the rents, issues, profits, and *increase* thereof, whether the same be the fruit of trade and commerce, of loans and investments, or the spontaneous production of the soil, or wrested from it by the hand of industry, is, under the constitution, sacred to the use and enjoyment of the wife, and cannot be held to answer for the debts of the husband."

In *Bongard v. Core*, 82 Ill. 19, it was held that:

"A married woman may own real and personal property under the statute, and have her husband act as her agent in transacting the business growing out of such property, such as preserving and transferring the same, without subjecting it to the payment of his debts,"
and that

" The products of the lands of a married woman, the

rents of her real estate, the increase from her stock, the interest on her money, etc., are all hers as absolutely as the capital or things from which they arise."

The language of the court was as follows:

" It would be but a mockery to say that a married woman might own and control her property, but all the increase or products arising from it should belong to her husband. To so hold would be to render her ownership useless, and to defeat the very purpose of ownership of property."

And while these cases were cases which did not involve the increase of stock, the principles announced by them are as applicable to this case as to the cases which were under consideration by the courts quoted.

However, in *Hanson v. Millett,* 55 Me. 184, which is a case involving the ownership of the increase of live stock, the court held that the natural increase of a mare possessed by a married woman belonged to the wife, and, as bearing on the proposition involved in this case, that the husband had given a bill of sale to this property, it also held that

" The naked declarations of the husband, as to the ownership of personal property claimed by the wife, are inadmissible."

*Russell v. Long,* 52 Iowa, 250, is also a case involving the increase of live stock. There it was directly held that

" The increase of live stock owned by the wife is her property and is not liable for the debts of the husband, though it is kept and cared for by him."

*Paden v. Goldbaum* (Cal.), 37 Pac. 759, is a case squarely in point on all the propositions that are raised in this case. There it was held

" In an action by a wife to recover for cattle alleged to be her separate property, but sold on execution by a judgment creditor of her husband, although the evidence shows

that her husband returned the stock for taxation in his name, and had the use thereof for dairy purposes, and represented to the judgment creditor that he was the owner thereof, if it appears that the stock was bought by the wife with money earned before marriage, and its increase was reserved as her property, a finding that the stock was in fact hers will not be disturbed."

Also, that

" Where a husband pastures his wife's cattle in return for their use for dairy purposes, she reserving the increase, such use by the husband, accompanied by a representation on his part that they were his, cannot, in the absence of any such representation on her part, or any act tending to mislead one holding a judgment against her husband as to the ownership of the stock, estop the wife from setting up ownership to defeat an execution levied on the stock under such judgment."

In this case there are no acts of the wife which would tend to create an estoppel, and the circumstances are altogether different from those in the case of *Abbott v. Wetherby*, 6 Wash. 507 (33 Pac. 1070, 36 Am. St. Rep. 176), cited by appellant, because there *are* accretions from respondent's estate in this case, and the community was not charged with all the expenses of the business, as it was in the case cited above, for one of the complaints of appellant here is that the community received the benefit of the sales of a portion of the increase of the cattle donated originally to the wife, and that it so received it with her consent. But the fact that she allowed the community to receive a portion of the profits of the business of stock raising could in no way estop her from claiming those unsold as her separate property.

The minor objections to the admission of testimony and the refusal of the court to admit, we think, are not meritorious. The excess of judgment, the testimony being that the value of the property was $600 and the judgment be-

ing for $625, was not called to the attention of the lower court on the motion for a new trial, and will therefore not be considered here.

The judgment is affirmed.

SCOTT, C. J., and ANDERS, J., concur.