[No. 4115.  Decided April 1, 1902.]

BRIDGET SHERLOCK, *Appellant,* v. BERNARD DENNY, *Respondent.*

HUSBAND AND WIFE — SEPARATE PROPERTY — ACTION BY WIFE TO RE-
    COVER MONEY LOANED — NON-SUIT.

In an action by a wife to recover money loaned a non-suit, either on the ground that the money was community property, or that the money borrowed was paid to plaintiff's husband, was erroneous, where the evidence showed that when the wife first came to the state ten years before she owned as separate property $1,000 in cash which she let her husband use in the transaction of business for the benefit of the community; that $200 of this sum was repaid to her some three years subsequently, and that about five years subsequent to such repayment, the husband handed her $1,200, which he had received on a sale, and told her to keep out what was coming to her; that she took $800, and of this sum loaned $500 as her separate property to defendant with her husband's knowledge and consent, $370 of which had been repaid by defendant; that $2,350 was paid by defendant to her husband for the husband's interest in certain milk business, and that the bill of sale included a release for work, wages and money loaned, but that the wife refused to sign same, although

the balance of the money claimed by her from defendant was left in his attorney's hands to repay her if she would sign the bill of sale.

SAME — COMMUNITY PROPERTY — EARNINGS OF WIFE — ACTION TO RECOVER — HUSBAND NECESSARY PARTY.

The earnings of the wife being community property whose management and control is vested in her husband, under the statutes of this state, a mere general agreement that the wife's earnings shall be her separate property is not sufficient to constitute a gift, and hence in such a case the husband must be joined as plaintiff in an action by the wife to recover.

Appeal from Superior Court, King County.—Hon. E. D. BENSON, Judge. Modified.

*Allen, Allen & Stratton,* for appellant.

*M. D. Leehey,* for respondent.

The opinion of the court was delivered by

WHITE, J.—The complaint alleges, as a first cause of action, that on or about March 1, 1900, plaintiff loaned defendant $500, and that only $370 of the amount has been repaid; as a second cause of action, that between April 11, 1899, and June 11, 1900, plaintiff performed work for defendant at his request of the reasonable value of $25 per month, none of which has been paid. The answer denies all the allegations of the complaint and sets up as affirmative defenses: (1) That the defendant paid plaintiff all the money ever loaned him by her; (2) that plaintiff is a married woman, that none of the matters alleged related to her separate property, and that her husband was a necessary party plaintiff; (3) that an accounting and settlement had been had between W. J. Sherlock, husband of plaintiff, and the defendant, of all matters in dispute. A trial was had, and, after the appellant rested, a motion was made for a nonsuit. The court directed that

a nonsuit be entered, and gave judgment for defendant. The granting of the nonsuit is the error complained of.

As to the first cause of action, appellant, on her direct examination, testified that in March, 1900, she loaned respondent $500; that the money was her separate property; that the respondent had repaid, of this sum, $350 cash, and $20 borrowed by her from him. On cross examination she testified that she was married about eleven years ago; that she and her husband removed to this state a year later; that she had $1,000 of her own when she was married; that she brought that in her own pocket to the state, with $1,000 of her husband's money; that her husband took the money on their arrival here, and either deposited it or used it; that he paid back $200 of it some three years later, and the remainder, $800, about January, 1899, when he sold a saloon in Seattle; that shortly thereafter respondent applied to her for a loan, and she told him "he could have that $500 of mine." She did not tell respondent that her husband had given her that money to keep for the husband. On redirect examination plaintiff testified that when her husband sold the saloon he gave her $1,200 of the proceeds, and told her "to keep out of that her own money;" that he owed her at that time $800; that respondent came to her and said, "Mrs. Sherlock, have you got any money?" that she replied, "I will give you $500;" that he said that would be enough; that he wanted the money to put up a bond; that she afterwards asked respondent for the money; that he said he would pay it back as soon as he withdrew the bond. Respondent said at that time that he would give her her money as soon as he could withdraw his bond, and her husband then said to him, "You can give her her money before you give me a cent." The respondent replied, "She is all the time

jawing about it." That respondent first gave her husband an order on one Marino for $250, and that she went and stopped it, and defendant said he would give it to her himself, and did then pay her $350 in cash. She further testified that the $350 in cash was paid to her husband, and by her husband given to her. She further testified that the husband took all of the $2,000 that they had when they came to this state, deposited it in his own name, and used it in buying and selling real estate and buying other property; that the $200 was paid back to her at Renton about seven years ago; that he never paid her any more until January, 1900, when he sold his saloon. The testimony also showed that for several years her husband and respondent were partners in the milk business, and that her husband had bought the interest in the saloon in Seattle and paid therefor $850 by a check which he got from the respondent on funds which he and the respondent had in the milk business. She testified also in her direct examination that she told the respondent to pay to her husband the $500. There is no proof that this was ever done. There is testimony showing that $2,350 was paid by the respondent to the husband of the appellant for the interest of the husband in certain milk business, and that a bill of sale was made by the husband for that business; that in that bill of sale was included a release for work, wages, and money loaned; that at the time the bill of sale was signed by the husband $130 was left in the hands of respondent's attorney, to be paid to appellant if she would sign the bill of sale. This the appellant refused to do. We do not think that this evidence shows the payment to the husband of the money borrowed. At least, it was for the jury to say whether any part of the $2,350 was a part of the balance due on the $500 loan, and whether it had all

been paid to the husband. We think the evidence establishes *prima facie* that the money loaned to the defendant was her separate property, and that only $370 of it has been repaid. Respondent contends that the motion for the nonsuit was made and sustained on the ground that the testimony established the fact that the money loaned was community property. In effect, he says the $1,000 which she loaned her husband eleven years before the trial was mingled with the community funds; that the $2,000 brought to this state, $1,000 of which she claimed, and $1,000 of which belonged to her husband, had become community property, because it was used by the husband in various ways in carrying on the community. This did not do away with the moral obligation the husband was under to repay the money loaned to him. When he gave to her the $1,200, and directed her "to keep her own money out of it," it amounted to a relinquishment to her of his interest in the $1,200 to the extent of his indebtedness to her. When she loaned $500 of this sum to the respondent as her own money, and the husband, with the knowledge thereof, acquiesced in the loan as made, it certainly amounted to a segregation of the amount loaned from the $1,200. This testimony would justify the court or jury in holding, independent of the debt due from the husband to the wife, that the husband, by permitting her to loan it in the manner she did, intended to make to her a gift of the $500. We therefore think that the court erred in sustaining a nonsuit to the first cause of action.

As to the second cause of action, appellant testified that she and her husband had an agreement that when she worked whatever she earned was to be her separate property, and that the agreement was always observed between them; that this agreement was made seven years ago, and

that the defendant knew of it. The agreement was that "whatever I would earn was my own money and I could use it and do whatever I pleased with it. I was working by the month then." This agreement was general in its terms, and had no reference to the work alleged to have been done by the appellant for the respondent. In the case of *Yake v. Pugh,* 13 Wash. 78 (42 Pac. 528, 52 Am. St. Rep. 17), it appeared that, before the wife consented to engage in the particular business in which the money was earned, her husband agreed, in consideration of her entering into the business, she should have whatever money she earned. We held in that case that the earnings were her separate estate. We think that case can be distinguished from the present one. Here the agreement was general in its terms, and had no reference to any particular business or employment. The statute as interpreted by us in *Abbott v. Wetherby,* 6 Wash. 507 (33 Pac. 1070, 36 Am. St. Rep. 176), provides that the earnings of the wife when living with her husband shall be community property. It is true that the husband may give to the wife his interest in any portion of the community property. Had the husband in the present case said that whatever the wife earned in working for the defendant should be her separate property, we have no doubt that, under the rule laid down by us in *Yake v. Pugh, supra,* she could hold the same, whether earned at the time or not. But we do not think the rule should be extended further. As the agreement in this case was general, and had no reference to any particular work, we hold that it was not sufficient to impress upon the earnings of the wife sued for in this action the character of separate property. An agreement contravening the general policy of the state should not be vague and inferential, as is the general

agreement testified to by the wife in this case. The statute provides that the husband shall have the management and control of the community personal property, and it follows from the construction put by us on §§ 4493 and 4494, Bal. Code, in *Abbott v. Wetherby, supra,* that the wife cannot maintain the second cause of action in her own name, because her personal earnings no longer belong to her in her own right.

The judgment of the court in granting a nonsuit to the second cause is sustained. The judgment of the court is reversed as to the first cause, with instructions to set aside the nonsuit to the same, and this case is remanded for further proceedings in accord with this opinion; the appellant to recover her costs on this appeal.

REAVIS, C. J., and HADLEY, MOUNT, FULLERTON and ANDERS, JJ., concur.