[No. 12925. Department Two. January 10, 1916.]

*In the Matter of the Estate of* SARAH A. BUCHANAN,

JAMES BUCHANAN, *as Administrator etc.,*

*Appellant.*[1]

APPEAL—REVIEW—FINDINGS. Findings upon conflicting evidence will not be disturbed on appeal when it cannot be said that the evidence preponderates against them.

HUSBAND AND WIFE — COMMUNITY PROPERTY — SEPARATE FUNDS— PROFITS AND GAINS — CONFUSION WITH EARNINGS. Findings that profits and gains of separate funds were so intermingled and confused with community earnings as to make the net result, after ten years, the community property of husband and wife, are sustained, where it appears that, at about the time of their marriage, $500 of separate funds of the wife and $400 of separate funds of the husband were invested in nine shares of the capital stock of a lumber company, which was thereafter managed by the husband as a close corporation, and operated much as a partnership, and successfully financed at the start largely through personal loans, and by profits and gains, increasing in value in ten years twenty-fold, largely through the personal efforts of the husband, who held one-half of the outstanding stock of the corporation at the time of the death of the wife under circumstances justifying the conclusion that his skill and efforts contributed much more to the profits and gains of the corporation and growth of its business than the relatively small investment at the inception of the enterprise; especially when taken in connection with the impossibility of ascertaining the true proportion of such original investment in the value of the capital stock at the time of the wife's death.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered March 29, 1915, upon find-

[1]Reported in 154 Pac. 129.

ings in favor of the petitioner, in an action to subject property to administration as part of a community estate, tried to the court. Affirmed.

*F. D. Oakley*, for appellant.

*Burkey, O'Brien & Burkey*, for respondent.

PARKER, J.—This is a proceeding in the administration of the estate of Sarah A. Buchanan, deceased, wherein Earl McCoy, a son and heir of deceased, seeks to have brought into the estate, and administered as part thereof, certain property which he claims was the community property of his deceased mother and her husband, James Buchanan, at the time of her death, which property James Buchanan claims as his separate property, and that it is therefore not subject to administration as part of the estate of the community. The relief prayed for by Earl McCoy is, in substance, that James Buchanan, who is the administrator of the estate of deceased, be required by the court to inventory this property and administer the same as the property of the community which was dissolved by the death of Sarah A. Buchanan. Issues were joined and trial had upon the merits, before the superior court without a jury, resulting in findings and judgment as prayed for by Earl McCoy, from which James Buchanan, both personally and as administrator, has appealed. The principal question, and the only one which we deem it necessary to here notice, is, Was the property the community property of deceased and James Buchanan at the time of her death?

The trial court made findings covering the facts in considerable detail. Contention is made in behalf of appellant that these findings are not in accordance with the evidence in a number of particulars. Because of the nature of the case, we have deemed it wise to look to the evidence as found in full in the statement of facts as certified by the court, rather than to the abstracts thereof prepared by respective counsel, in which they seem to be at variance. We have, therefore, read

all of the evidence as found in the statement of facts, and are convinced therefrom that we should now take the same view of the facts as the trial court did, especially since the court's conclusions rest largely upon the oral testimony of witnesses whose credibility is involved. In other words, we cannot say that the evidence does not preponderate in favor of the court's findings. We shall not analyze the evidence here, but state the facts, in substance, as found by the trial court, and some additional facts which we think the record shows and are worthy of note. The quotations in our statement following are from the findings.

Sarah A. Buchanan was married to James Buchanan on April 15, 1901. She was then a widow and had five children living, one of whom was Earl McCoy, the petitioner in this proceeding.

"Shortly prior to her marriage to James Buchanan and in January, 1901, the deceased sold a timber claim then owned by her as her sole and separate property, and received therefor the sum of approximately $885, over and above all sums necessary to pay encumbrances upon said property, and that prior to her marriage she was the owner of the furniture in the hotel known as the Brunswick Hotel, located on East 25th and D streets, in the city of Tacoma; that said hotel had from thirty to thirty-six rooms furnished, and the furniture was worth from five hundred to six hundred dollars; and that just prior to her marriage, the deceased sold the furniture, the exact amount which she received therefor being unknown to the court.

"Prior to his marriage to deceased, James Buchanan had been a laborer working in various saw-mills in the state of Washington and British Columbia for a period of about four years and had saved but little if any money. James Buchanan and one Clinton McDaniel, in April, 1901, executed articles of incorporation of the Puget Sound Lumber Company, the same being filed on April 11, 1901. On April 13, 1901, James Buchanan paid into the treasury of the said company $600 in payment for six shares of its capital stock, and deceased and James Buchanan then went to Victoria, British Columbia, and were married on April 15, 1901, and continued to live

together as husband and wife until her death.   Three hundred dollars additional was paid in by James Buchanan in payment of three additional shares of stock in said company in August, 1901, and in July, 1902.

"James Buchanan, at all times after the mill was put into operation and until the death of his wife, Sarah A. Buchanan, devoted his entire time and attention to work in connection with the operation of said mill.   Of the sum of $900 in money paid for said stock, $500 or more of the same was paid with money furnished by the deceased, and not more than $400 of said money was furnished by the said James Buchanan. The money furnished by the deceased and paid in payment for stock on April 13, 1901, was furnished by the deceased in contemplation of an immediate marriage with the said James Buchanan and for the purpose of helping finance the said lumber company as a community enterprise, and the remaining money was paid for the same purpose.   The said lumber company was financed to a large extent by borrowed money raised from notes signed by the corporation and by the members thereof, including James Buchanan; and largely by the use of money so borrowed, the original mill was practically rebuilt or changed several times, greatly increasing its value and capacity, and one time, after it had been destroyed by fire, it was entirely rebuilt, partly from money collected from insurance and partly from money so borrowed.

"The capital stock of said company was divided into fifty shares of the par value of $100 each, and about the year 1909, 16 2-3 shares had been issued and stood in the name of James Buchanan, 16 2-3 shares had been issued to, and stood in the name of, Wade Hampton, and 16 2-3 shares had been issued and stood in the name of E. V. Wintermote, who had purchased the stock formerly owned by Mr. Daniel, and that about said time James Buchanan and Mr. Wintermote purchased the stock of Mr. Hampton for $17,000, paying him therefor in cash out of the corporate funds, but that at said time Mr. Hampton delivered his certificates of stock to the officers of the company, and since said time no transfer has been made of said certificates, and at the time of the death of said deceased and continuing to the present time, all of the outstanding stock was owned by the community composed of Mr. Buchanan and the deceased owning one-half thereof and Mr. Wintermote owning the remaining one-half.

"Through the money borrowed on the credit of James Buchanan and the other members of the said lumber company while the deceased and James Buchanan were husband and wife, and through the work, energy and skill and management of the said mill by the said James Buchanan and his associates during the time that Mr. Buchanan and said deceased were married, the said mill plant and equipment increased many times in value; a dividend of thirty per cent upon the capital stock was declared in 1905, and the same amounting to $500, was credited to the account of James Buchanan upon the books of the company in the same account in which the salary account of Mr. Buchanan was credited, and out of this fund the community expenses of the deceased and Mr. Buchanan were paid.

"Deceased and James Buchanan did not in their lifetime treat said property as the separate property of either of them, but as their community property, and when compared to the value of said mill plant at the time of the death of deceased, the original investment in said stock was so small and its part in creating the final result was so uncertain and insignificant that, taken in connection with the impossibility of ascertaining its proportion in the value of the capital stock or of said mill at the time of her death, and the fact that the salary of the said James Buchanan in conducting said mill and the dividends derived from said stock were intermingled, whatever of separate funds entered into said property was so intermingled with the community property as to have lost its identity and separate character, and all of said stock and all interest in the said mill plant constituting a one-half interest therein was the community property of the said deceased and Mr. Buchanan at the time of her death."

We do not overlook the fact that the conclusions of the court as to the property being community property, in the above quoted portions of the findings, can hardly be regarded as findings of fact, but rather as conclusions of law. We therefore do not adopt them as findings of fact. Sarah A. Buchanan died April 12, 1911, within three days of ten years after her marriage to James Buchanan. Thereafter James Buchanan was duly appointed administrator of her estate and that of the community which was dissolved by her death.

The facts above summarized are gathered from the find-
ings of the court. There are other facts shown by the record
which we deem also worthy of note here, as follows: The
Puget Sound Lumber Company was, during the lifetime of
Sarah A. Buchanan, what might be designated a close corpor-
ation, its stock being owned by those very few persons, who
were actively engaged in promoting its business. Indeed, when
the manner of its operation and financing is considered, it
might be said to have been operated much as a partnership,
though it can hardly be said that it was not technically a
corporation. James Buchanan was at all times its active
manager and one of its principal officers; and while he re-
ceived a salary, as appears from the books of the company,
the growth of its business and the accumulation of its prop-
erty was manifestly the result of his personal efforts, ap-
parently, more than that of any one else, and in any event,
much more than the result of the small amount of capital in-
vested at the beginning by himself and wife. He was mani-
festly more than a mere employee for wages or salary. His
whole attitude and demeanor towards the business of the com-
pany points to his efforts in its management as being more
for the purpose of making money as a part owner thereof
than as being interested only in receiving wages or salary for
his work as an employee. The property here involved is a
one-half interest in this corporation, its business and prop-
erty, in so far as such interest is evidenced by one-half of the
capital stock thereof standing in the name of James Buchan-
an. Of course, this stock is personal property, and it may
also be noted that the property of the corporation is now, and
at all times has been, substantially all personal property.
Some of these facts may seem irrelevant, but we think none of
them are wholly so, in view of the involved nature of our
problem.

Counsel for appellant rely upon that line of decisions
holding that the status of property as to its being community
or separate is determinable from its status at the time of its

acquisition by either member of the community, and that its "rents, issues and profits" go to its owner. Counsel proceed upon the theory that this stock was the separate property of appellant in the beginning because of his claimed ownership of the money which then purchased it, and that its increased value because of the growth of the business and property of the Puget Sound Lumber Company also became his separate property. In this behalf our attention is called to the decisions of this court in: *Webster v. Thorndyke*, 11 Wash. 390, 39 Pac. 677; *Harris v. Van De Vanter*, 17 Wash. 489, 50 Pac. 50; *Hester v. Stine*, 46 Wash. 469, 90 Pac. 594; *Guye v. Guye*, 63 Wash. 340, 115 Pac. 731, 37 L. R. A. (N. S.) 186; *Teynor v. Heible*, 74 Wash. 222, 133 Pac. 1, 46 L. R. A. (N. S.) 1033, and *In re Deschamps' Estate*, 77 Wash. 514, 137 Pac. 1009, which decisions have to do with real property, the increased value thereof during coverture, and crops raised thereon; and also with live stock and their natural increase. The theory and nature of counsel's argument is evidenced by their quotations from our decision in *Guye v. Guye*, *supra*, at page 348, as follows:

"Counsel argue, however, that the natural enhancement in the value accruing while the marital relation existed, should be treated as community property. They point out that the tracts adjudged to be separate property by the trial court have enhanced in value practically three hundred and fifty thousand dollars since the marriage of the appellant and Francis M. Guye, and contend that it is property acquired during marriage within the spirit and intent of the statute. But we think this contention untenable also. Since by the statute the spouse owning separate property is entitled to the rents, issues, and profits thereof, so such owner must be entitled to the natural increase in value, as such increase is as much the issue of such property as would be the rents derived therefrom. So, also, under such a rule, the ownership of a specific tract might be constantly changing. As long as its value remained stationary or decreased it would be separate property. But the moment it increased in value it would become mixed property; that is, in part separate and in part

community. And so, again, property that is separate property today might be mixed property tomorrow, and on the next day again be separate property, owing to its fluctuation in value. We cannot think this the meaning of the statute. We think the statute meant to declare that a specific article of personal property, or a specific tract of real property, once the separate property of one of the spouses, no matter how it may fluctuate in value, remains so, unless, by the voluntary act of the spouse owning it, its nature is changed."

We are unable to gather from these observations of the court any rule more favorable to counsel's contention than that specific real or personal property once becoming separate property remains so, unless by voluntary act of the spouse owning it its nature is changed. But this, it seems to us, does not solve the question of when profits or gains resulting largely from personal efforts of one of the spouses become separate or community property. It is by no means always clear that such profits and gains are or are not rents, issues and profits of separate property, though separate property may have, in a measure, contributed to such gains.

The property here involved is not real property; nor do we think that the original investment, from which in a measure it comes, was in any event at the beginning more than four-ninths the separate property of appellant, five-ninths at least being the then separate property of deceased. Nor can we concur in the view that the same twenty-fold increase in value of this original investment resulted as a natural increase apart from the personal efforts of appellant while a member of the community. We are constrained rather to the view that such change, increase and growth in the business and its property was very much more the result of the personal efforts of appellant during the ten years of his married life, in the performance of which he was the servant of the community. As we view it, we are then confronted with the question, What was the principal producing cause of these profits and gains? This may not be a very exact or satisfactory rule of determining whether

property is community or separate. But where a small original investment of separate funds is united with the personal efforts of a member of the community, and therefrom profits and gains to the extent of some twenty-fold are returned, the property being personal and undergoing many changes, we know of no other rule by which the question of such gains being community or separate property can be determined other than by taking into account the relative contributing force of the original investment and the personal efforts of a member of the community. The authorities do not furnish us much light upon this question, in so far as decisions directly in point are concerned. However, in *Yesler v. Hochstettler*, 4 Wash. 349, 366, 30 Pac. 398, observations were made by Judge Stiles, speaking for the court, quite in harmony with this view as follows:

"In this case the land purchased with the borrowed money paid for itself, and a large profit in land and money besides. It was a speculation purely personal in which the energy, skill and business prudence of Mrs. Yesler certainly were greater factors than the credit given by the mortgage of her land. But these mental forces, whether of husband or wife, are servants of the community, and their products are its property, to be shared in equally by the members of the community, and to follow the channels of devise and descent provided by the statute."

In *Lake v. Bender*, 18 Nev. 361, 4 Pac. 711, 7 Pac. 74, the question was presented somewhat as it is here, and was reviewed at some length. Justice Leonard, speaking for the court, observed:

"And in this or any other case, if profits come mainly from the property, rather than the joint efforts of the husband and wife, or either of them, they belong to the owner of the property, although the labor and skill of one or both may have been given to the business. On the contrary, if profits come mainly from the efforts or skill of one or both, they belong to the community. It may be difficult in a given case to determine the controlling question, owing to the equality of the two elements mentioned, but we know of no other

method of determining to whom the profits belong. In the use of separate property for the purpose of gain, more or less labor or skill of one or both must always be given, no matter what the use may be; and yet the profits of property belong to the owner, and in ascertaining the party in whom the title rests, the statute provides no means of separating that which is the product of labor and skill from that which comes from the property alone."

The following decisions, while not directly in point, we think lend support to this view: *Abbott v. Wetherby,* 6 Wash. 507, 33 Pac. 1070, 36 Am. St. 176; *Sherlock v. Denny,* 28 Wash. 170, 68 Pac. 452; *Boggess v. Richards' Adm'r,* 39 W. Va. 567, 20 S. E. 599, 45 Am. St. 938, 26 L. R. A. 537; *Penn v. Whitehead,* 17 Gratt. (Va.) 503, 94 Am. Dec. 478; *Glidden, Murphin & Co. v. Taylor,* 16 Ohio St. 509, 91 Am. Dec. 98.

It may also be said that our decision in *Katterhagen v. Meister,* 75 Wash. 112, 134 Pac. 673, and decisions therein noticed, are in harmony with our conclusions here reached touching the question of investments of funds borrowed during coverture becoming community property though borrowed upon the credit of one spouse, the theory being that such gains are the product of community individual efforts.

These observations, we think, in any event, lead to the conclusion that the gains and profits produced by the personal efforts of appellant, though added to, in a measure, by the original investment, become community property. We agree, however, with the trial court that the funds, though at the beginning separate property of appellant and Sarah A. Buchanan, in the proportion of four-ninths and five-ninths, which purchased the stock in the first instance, have during the ten years of coverture become so intermingled with community property and lost their identity as separate property that all of the stock and interest in the Puget Sound Lumber Company, standing in appellant's name, became the community property of appellant and his deceased wife, Sarah A. Buchanan.

The proper disposition of the case is fraught with great difficulty, but upon the whole record we cannot escape the conclusion that the trial court properly disposed of the rights of the parties, and that its order and judgment must be affirmed. It is so ordered.

MORRIS, C. J., MAIN, HOLCOMB, and MOUNT, JJ., concur.