ZaSu Pitts Woodall, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 84132. Promulgated July 19, 1938.

98

*P. D. Johnston, Esq.*, and *T. H. Poole, C. P. A.*, for the petitioner.
*D. M. Evans, Esq.*, for the respondent.

OPINION.

MELLOTT: The position of the respondent is that under the above facts the petitioner's ,earnings were her separate property. He relies partially upon section 169 of the Civil Code of California, which is as follows:

The earnings and accumulations of the wife, and of her minor children living with her or in her custody, while she is living separate from her husband, are the separate property of the wife.

In *Makeig* v. *United Security Bank and Trust Co.* (1931), 112 Cal. App., 138; 296 Pac. 673, the court construed the phrase "living separate", as used in the above section, as applying "to a condition where the spouses have come to a parting of the ways and have no present intention of resuming the marital relations and taking up life together under the same roof", but not to a condition where the spouses are residing temporarily in different places due to economic or social reasons. In *Loring* v. *Stuart* (1889), 79 Cal. 200; 21 Pac. 651, wherein it appeared that a husband left his wife on account of domestic infelicity and during his absence determined never to resume marital relations with her, his wife and children thereafter living together supported by her exertions, the court held that this was a "separate living" within the meaning of section 169 and that the earnings of the wife during that period were her separate property.

In *Street* v. *Bertolone* (1924), 193 Cal. 751; 226 Pac. 913, the court, discussing the effect of section 168, which provides that "the earnings of the wife are not liable for the debts of the husband", said:

* * * Section 168 does not provide that the earnings of the wife are her separate property, but that they are not liable for the debts of her husband. They continue to be community property for the purposes of administration and for the purposes of investment and other management by the husband.

In other words, the earnings of the wife *living with her husband* are subject to the rules governing community property except in the single respect mentioned in section 168; whereas, the earnings of a wife *living separate* from her husband *are not subject to any of the rules governing community property.* [Emphasis supplied.]

See also *Boland* v. *Boland*, 81 Cal. App. Dec. 1099; 46 Pac. (2d) 238; *Tagus Ranch Co.* v. *First National Bank*, 7 Cal. App. (2d) 457; 46 Pac. (2d) 809; *Union Oil Co.* v. *Stewart* (1910), 158 Cal. 149; 110 Pac. 313; *Greve* v. *Echo Oil Co.* (1908), 8 Cal. App. 275; 96 Pac. 904; *Marlow* v. *Barlew*, 53 Cal. 456; *Tobin* v. *Galvin* (1874), 49 Cal. 34; *Lawrence* v. *Spear* (1861), 17 Cal. 421.

The evidence clearly indicates that the parties had come to a parting of the ways. Although both testified that they hoped for, and discussed, a reconciliation, there is no evidence showing that either, at any time after the husband left the common home, harbored any "present intention" of resuming marital relations or again living together. The hope for a reconciliation which they, or either of them, may have had was not realized and such discussions as they had did not result in healing the breach between them. The divorce apparently was secured with all possible dispatch. It was initiated as soon as possible after the necessary year had elapsed. Under the laws of California (section 107) desertion "must continue for one year" in order to be a ground for divorce. The separation occurred late in 1930 or early in 1931, and the suit was filed January 14, 1932. On April 20, 1932, the parties entered into the property agreement, in which, among other things, it was expressly stated that in consequence of certain unhappy differences they were and had been living separate and apart since on or about November 24, 1926. Within a few days after the property settlement was made, viz., on April 26, interlocutory judgment was entered. On May 2, 1933, and as soon as the year required by the statutes had elapsed, the final judgment of divorce was entered. There was little delay in making the separation a permanent one.

Counsel for the petitioner contends that, if section 169 defines or enlarges the separate estate of women, as defined by Article XX, sec. 8,[1] of the Constitution of California of 1879, it is unconstitutional. He argues that its constitutionality can be upheld only if it is construed to be merely a statute of exemption and in no sense defining separate property.

The cases cited by counsel in support of his contention that the section is unconstitutional are all from other states. *Arnold* v. *Leonard*, 114 Tex. 535; 273 S. W. 799; *Kerr* v. *Tyler Guaranty State Bank* (Texas), 283 S. W. 601; *Stephens* v. *Stephens* (Texas), 292

---

[1] Sec. 8. All property, real and personal, owned by either husband or wife during marriage, and that acquired by either of them afterwards by gift, devise, or descent, shall be their separate property.

S. W. 290; *Burruss* v. *Murphey* (Texas), 5 S. W. (2d) 612; *Frame* v. *Frame* (Texas), 36 S. W. (2d) 152; *Potorff* v. *Adams Co.* (Texas), 70 S. W. (2d) 745. While there may be some similarity between the statutes of those states and the statutes of California, no doubt there are also material differences, which, if explored by a court of general jurisdiction, and especially by an appellate court of California, would result in a holding that the section is constitutional.

The section in question was enacted in 1872. It was based on and superseded, Act 4661, Gen. Laws of California, pertaining to the protection of the rights of married women and the rights of a wife living separate and apart from her husband. (Stats. 1869–70, p. 226.) So far as we have been able to ascertain from a check of the California decisions, it has never been declared unconstitutional by any court in that state; nor has the petitioner called our attention to any case in which its constitutionality was even assailed. The decisions of the state courts as to property rights and interests of persons residing in that state are controlling upon Federal courts and the Board. *Burnet* v. *Harmel*, 287 U. S. 103. Since the section has never been declared unconstitutional by the courts of California, but on the contrary has been applied and held effective over a long period of time, it must be followed here. We hold, therefore, that the earnings of petitioner during 1932 and 1933 up to the time of the final decree were her separate property although the marital status was not dissolved until entry of the final decree.

Upon brief counsel for petitioner cite *Abbott* v. *Wetherby*, 6 Wash. 507; 33 Pac. 1070, and say that the supreme court of that state had construed a section of the Washington statutes which is identical with section 169 of the California Code, as being a statute of exemption and in no sense defining separate property. A reading of the garbled portion of the opinion set out in the brief indicates that the holding was as counsel contends; but the opinion itself shows that the court made no such holding. The court was discussing the section exempting a wife's earnings from the debts of her husband, which is comparable to section 168 of the California Code referred to *supra*, and in its opinion said:

* * * It is true that section 1402 (Sec. 6895, Remington's Comp. Stats.) provides that the wife may receive the wages of her personal labor, but these sections must be construed together, and, thus construed, we must conclude that *her earnings only become her separate property while she is living separate from her husband.* Any other construction would render meaningless section 1403; for, if section 1402 created her earnings into a separate estate, the enactment of section 1403 would have been absolutely useless, as all its provisions, under this construction, are embraced in section 1402. And the same reason would apply to section 480, Code Proc. While the personal earnings of a wife are exempt, it must be construed to be a statute of exemptions, and in no sense defines separate property. *The statute seems to definitely*

*distinguish the rights acquired by wives who are living with their husbands from the rights acquired by wives who are living separate from their husbands.* [Emphasis supplied.]

The statutes of California make the same distinctions as those pointed out by the Supreme Court of Washington between the rights of wives who are living with their husbands, and those acquired by wives who are "living separate" from their husbands. *Street* v. *Bertolone, supra.*

It is further contended that petitioner's earnings were community income because of an executed oral agreement to that effect. We are not concerned here with the question whether an oral agreement can be made between a husband and wife in California respecting their property interests which will be valid and effective to change community property into the separate property of either. For the purposes of this case it may be assumed that such an agreement can be made. Our question is simply whether the written agreement set out in our findings was actually modified by an executed oral agreement. Section 1698 of the Civil Code of California provides that:

A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise.

The testimony of the petitioner and Gallery with reference to the purported modification of the written property settlement agreement is not very satisfactory and rather indefinite. Both testified, in substance, that immediately after the agreement was signed at the office of the attorney they had an understanding to go ahead with their business relations the way they had been doing; to let their financial matters go exactly as they were; that they meant by this that their earnings were to remain community property. Assuming that such an understanding was in fact had—but the proof is not sufficient to justify us in finding that it was—we would still have the question whether or not the earnings of the petitioner were actually treated as community property; and in that connection the following discussion is pertinent.

Section 172 of the Civil Code of California gives the husband the management and control of the community personal property with the like absolute power of disposition, other than testamentary, which he has of his separate estate. But Gallery had no such management and control even if it be assumed that the modification of the written agreement were made. The earnings of the petitioner were turned over to the Equitable Investment Corporation and it, in conjunction with petitioner, had full charge of her financial affairs. No withdrawals could be made from the account except by check first signed by the petitioner and countersigned by an officer of the company. Gallery had no authority to withdraw any funds from the

account. Whatever he received from the earnings of the petitioner he received because payments to him, or for him, were authorized by the signing of checks by the petitioner or because petitioner gave cash to him. While some payments were made to, or for, him, as they were needed to pay his expenses or in an attempt to save his enterprises, there is no evidence showing that he had any control over such earnings or that he exercised the right to manage, control, or dispose of them as community property after the execution of the property settlement agreement. Gallery testified that prior to the time he left the petitioner he had handled the finances of the family. But it is apparent that he did not do so after the separation. He also testified that sometime in 1929 the account with the Equitable Investment Corporation was established with his knowledge and consent to protect the petitioner's salary from his creditors. As heretofore mentioned the California law provides that the wife's earnings are not liable for the debts of the husband. Nevertheless Gallery had the right, under section 172, to manage and control the community personal property. If an oral understanding actually existed between the parties that the petitioner's earnings were to remain community property after the execution of the property settlement agreement, it is clear that such understanding was not carried out or executed by the parties as required by section 1698, *supra*, in order effectively to alter or modify the written contract. Cf. *Brown* v. *Brown*, 170 Cal. 1; 147 Pac. 1168. It is held, therefore, that there was no modification of the written contract by an executed oral agreement.

It is argued that the legal effect of the entry of an interlocutory decree of divorce is to make the separation of husband and wife lawful; that therefore it must be held that petitioner and Gallery were living apart by consent and agreement until the final decree of divorce was granted; and that no abandonment within the meaning of section 169, *supra*, had occurred. As heretofore pointed out, a "living separate" under section 169 does not necessarily contemplate an abandonment. It exists if there is a parting of the ways with no present intention to resume marital relations, whatever the cause of separation may have been. Cf. *Makeig* v. *United Security Bank & Trust Co.*, *supra*. Nor can we conclude that there was no desertion on the part of petitioner's husband, notwithstanding he so testified; for the court granted her a divorce on that ground. Section 99 of the Civil Code of California provides that "Separation by consent, with or without the understanding that one of the parties will apply for a divorce is not desertion." We must assume that the court found that Gallery, as alleged by petitioner in her complaint, "willfully * * * without cause, * * * against her will, and without her consent" deserted and abandoned her. The contention that the granting of the interlocutory decree legalized or changed the desertion

106

into a separation by agreement is also fallacious. Counsel's argument that the separation was "lawful," within the meaning of certain cases cited by him, is not persuasive. Of course it was lawful for the parties to remain separate and apart after the entry of the interlocutory decree in the sense that " 'lawful' denotes something which, in its substance, is sanctioned or permitted by the law, as distinguished from conformity to positive rules of law." *Stauter* v. *Carithers*, 185 Cal. 160; 196 Pac. 37. But that does not mean that there was no desertion or that the interlocutory judgment had turned it into a lawful separation. It merely sanctioned petitioner's "living separate from her husband" because of his willful desertion without her consent as alleged in her divorce complaint. An interlocutory decree of divorce is an agreement or a contract only to the extent that it adjudicates whatever is properly embraced in the allegations of the complaint and prayer for relief pertaining to the personal marital obligations or property interests. *Brown* v. *Brown, supra; London Guarantee & Accident Co., Ltd.* v. *Industrial Accident Commission,* 181 Cal. 460; 184 Pac. 864; *Peters* v. *Peters,* 60 Pac. (2d) 313. Its office "is merely that of 'declaring that the party in whose favor the court decides, is entitled to a divorce.' "

Nor is the argument that petitioner and her husband were not "living separate" within the meaning of section 169 until entry of final decree of divorce persuasive. Upon the entry of a final decree of divorce a married woman acquires the status of a feme sole. The language of the statute contemplates a separation during marriage as it refers to a "wife  *  *  *  living separate from *her* husband." The construction urged by counsel would make the provisions of section 169 meaningless.

The respondent did not err in determining the deficiencies.

*Decision will be entered for the respondent.*