## WOODALL v. COMMISSIONER OF INTERNAL REVENUE.
### No. 9072.

Circuit Court of Appeals, Ninth Circuit.
June 28, 1939.

Rehearing Denied Sept. 11, 1939.

Philip D. Johnston, of Los Angeles, Cal. (Johnson & Johnston, of Los Angeles, Cal., of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, F. E. Youngman, and Joseph D. Jones, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

### GARRECHT, Circuit Judge.

The respondent assessed deficiencies in petitioner's income tax for the calendar years 1932 and 1933 in the amounts of $11,-531.68 and $3,864.37, respectively, and petitioner filed petition for redetermination by the Board of Tax Appeals. The Board made findings of fact and rendered an opinion. 38 B.T.A. 97. Its decision, which we are asked to review, upheld the Commissioner.

The petitioner and Thomas S. Gallery, a resident of California since 1919, were married in California July 24, 1920. In the latter part of 1930 or early in 1931 Gallery left the petitioner and established a separate residence. January 14, 1932, the petitioner instituted suit against him in the Superior Court of the State of California for the County of Los Angeles, for divorce upon the alleged ground, "That for more than one year last past the defendant has willfully and without cause deserted and abandoned the plaintiff and still continues so to willfully and without cause desert and abandon the plaintiff and to live separate and apart from her, against her will, and without her consent." Interlocutory decree of divorce was entered April 26, 1932; final decree May 2, 1933; and on October 28, 1933, petitioner was married to John E. Woodall.

On April 20, 1932, prior to the entry of the interlocutory decree, petitioner and Gallery entered into a "Property Settlement Agreement," the pertinent portions of which are as follows:

* * *

"Whereas, in consequence of certain unhappy differences the parties now are, and since on or about November 24, 1926 have been, living separate and apart, and

"Whereas, the parties hereto desire to settle and divide their property interests
* * *.

* * *

"Now, Therefore, in consideration of the premises aforesaid and with the mutual assent of the parties hereunto, the said parties promise and agree as follows, to wit:

* * *

"The husband agrees that he will and he does hereby transfer and deliver, grant, assign and convey unto the wife as and for her separate property [certain described real and personal property].

"The wife agrees that she will and she does hereby transfer and deliver, grant, assign and convey unto the husband as and for his separate property, [certain described real and personal property].

"Except as hereinbefore specifically set forth the parties hereto agree that all property real and personal now in the possession of, or standing in the name of either one of the parties, is the separate property of the party in whose possession it now is, or in whose name it now stands, free from all claims, rights or interests of every nature of the other party. The husband hereby assigns, transfers, conveys and releases to the wife, and her heirs, all rights, titles, interests and claims which he has, or might have, in or to any such property of the wife. The wife hereby assigns, transfers, conveys and releases to the husband, and his heirs, all rights, titles, interests and claims which she has, or might have, in or to any such property of the husband. All property hereafter acquired, in whatsoever manner, and all

earnings which may be acquired by either of the parties, shall be the sole and separate property of the party so acquiring it, free from all claims, rights or interests of the other.

"The parties agree that each of the parties hereto shall have the right to dispose of his or her property, both real and personal that may be hereafter acquired by him or her as fully and effectually as if the parties hereto were not married and had never been married, and each party hereby releases and relinquishes to the other party, and to his or her heirs, assigns and legal representatives, all claims, demands and interests against the estate of the other upon the death of the other.

* * *

"The parties hereto do and have hereby settled and forever adjusted by and between themselves all present and future property rights of every kind and nature, whether community or separate property, wheresoever the same is or may be located, and all other rights and claims which either may have or claim against the other so far as their property rights are concerned, and in addition thereto the said parties hereto do hereby settle and adjust and have settled and adjusted, and forever determined, all their respective rights to, or and in any inheritances the one from the other respectively.

"Each party does hereby renounce and disclaim any right to or claim for support from or by the other, or by or from his or her estate. This agreement is not made in fact nor is it intended as an agreement for a divorce between the parties hereto; but no divorce proceedings shall in any way affect this agreement, which is intended as a final settlement of property interests whether said parties remain husband and wife, or whether they assume some other or different relation toward each other, and each party hereto, in consideration of this property agreement, hereby expressly waives any and all claims or rights now existing, or hereafter arising, against the other for alimony, support, maintenance, attorneys fees, or other claim whatsoever."

Beginning in about October, 1929, and up to May 2, 1933, earnings of the petitioner were deposited with the Equitable Investment Corporation of Hollywood, California, which managed and handled financial affairs for its clients. As a part of its service it paid all business, personal and household bills for petitioner and kept all records pertaining thereto for income tax and other purposes, in the same manner as it did for others of its clients. It so handled all the financial affairs of petitioner during 1932 and from January 1 to May 2, 1933; paid to or for her, all of her personal, household, and business bills, including allowances for pocket and lunch money; also, at her request, but only after she had first signed the checks therefor, it paid certain personal, household, and business expenses of Gallery.

During 1932 there was paid out of petitioner's account with the Equitable Investment Corporation by checks to, or for, Gallery, the total amount of $11,278.19. In addition, during said year, the petitioner paid over to him in cash the aggregate amount of $21,524.69, which he needed to carry on, and to save his investment in, some enterprises in which he was then engaged. Such enterprises, however, did not turn out profitably but resulted in losses.

No check was issued by the Equitable Investment Corporation for payment out of petitioner's funds without the signature of petitioner, and her signature, in addition to the signature of an officer of the corporation, was a prerequisite. All checks were countersigned by an officer of the corporation after they had first been signed by the petitioner, and, under the arrangement with the corporation, Gallery could not sign checks against the account. No funds were deposited by Gallery in the account during the taxable periods except some refund checks for very small amounts.

During 1932 Gallery had gross earnings of $5,000 from "sport enterprises," and net earnings of $1,637.38. He had no net earnings for the year 1933.

After the parties separated they had several conferences and discussions pertaining to business matters and also relating to a possible reconciliation and resumption of marital relations; no reconciliation occurred, however, nor did they ever resume the marital relationship.

The petitioner's net earnings during 1932 were $74,265.77, of which $12,862.51 was earned prior to April 20, 1932, and the remainder, $61,403.26 was earned after said date. During 1933 petitioner earned $88,915.87. Of the latter amount $20,600.57 was earned by her between January 1 and May 2, 1933, the date of the entry of the final decree of divorce. In her income tax return for 1932 the petitioner reported a net income of $37,951.58, being one half of the total amount of her net earnings and

the net earnings of Gallery. Gallery in his return for 1932 reported the same amount as his net income. In his income tax return for 1933 Gallery reported one-half of petitioner's net earnings for the period of January 1 to May 2, 1933, or $10,300.28.

It would appear from the findings of fact that the income of petitioner was her separate property, in view of Section 169 of the Civil Code of California and the Property Settlement Agreement of April 20, 1932. Additional evidence was introduced, however, to the effect that the written agreement was superseded, so far as income was concerned, by an oral agreement allegedly entered into a few seconds after the signing of the written property settlement agreement. Both petitioner and Gallery testified that they signed the "Property Settlement Agreement" without reading it and upon being informed by their attorney immediately after signing, that the agreement made their respective incomes separate property, they orally agreed that their incomes should "continue to be handled on a community basis." The Board's opinion stated the proof was not sufficient to justify a finding that such an oral agreement was made.

The question before us is whether the income of petitioner earned in 1932 and the early part of 1933 is taxable to her as her separate property. The Commissioner ruled that under section 169 of the Civil Code of California, which reads as follows: "The earnings and accumulations of the wife, and of her minor children living with her or in her custody, while she is living separate from her husband, are the separate property of the wife", the petitioner's earnings were her separate property. The Board sustained the Commissioner's ruling.

The petitioner contends that Section 169 of the Civil Code of California is not applicable; that the written property settlement agreement of April 20, 1932, was modified, abrogated, or superseded by an oral agreement made immediately upon the signing of the written agreement; that the earnings of both spouses are community property until the entry of the final decree of divorce; that the Board failed to distinguish between the circumstances which existed prior and subsequent to April 20, 1932 (the date of the entry of the interlocutory decree of divorce); and that the Board erred in determining the petitioner was taxable on one half of the net

income earned by her then husband in 1932.

We are of opinion that Section 169 of the Civil Code of California governs the interests of the petitioner and Gallery in her income earned while the two were living sparate and apart within the meaning of the section, unless there was a marriage settlement containing stipulations contrary to said Section 169. Cf. § 177, C. C.Calif.

Section 169 of the Civil Code has been before the courts of California on numerous occasions and has been enforced. Loring v. Stuart, 79 Cal. 200, 21 P. 651; Union Oil Co. v. Stewart, 158 Cal. 149, 156, 110 P. 313, Ann.Cas.1912A, 567; Street v. Bertolone, 193 Cal. 751, 754, 226 P. 913; Makeig v. United Security Bank & Trust Co., 112 Cal.App. 138, 143, 296 P. 673; Tagus Ranch Co. v. First Nat. Bank, 7 Cal.App.2d 457, 462, 46 P.2d 770; Cal.Jur. Supp., vol. 3, § 49, p. 539. "It is undoubtedly the law that no matter what the cause of the separation may be, if it is a separation in the legal sense the wife's accumulations are her own.

"Living separate and apart, however, as contemplated by said section 169, does not apply to a case where a man and wife are residing temporarily in different places due to economic or social reasons, but applies to a condition where the spouses have come to a parting of the ways and have no present intention of resuming the marital relations and taking up life together under the same roof." Makeig v. United Security Bank & Trust Co., 112 Cal.App. 138, 143, 296 P. 673, 675. The desertion and abandonment of petitioner by Gallery, the filing by her of a complaint for divorce which alleged, "That for more than one year last past the defendant has willfully and without cause deserted and abandoned the plaintiff and still continues so to willfully and without cause desert and abandon the plaintiff and to live separate and apart from her, against her will, and without her consent", as well as the interlocutory and final decrees, bring this case squarely within the "living separate from her husband" provisions of Section 169.

It is urged upon us that Section 169, C.C. is unconstitutional as being in conflict with Section 8 of Article XX of the Constitution of the State of California, which reads as follows: "All property,

real and personal, owned by either husband or wife before marriage, and that acquired by either of them afterwards by gift, devise, or descent, shall be their separate property." In view of the fact that Section 169, C.C. has on many occasions been before the courts of the state of California, and passed upon, without question of its constitutionality, we are disinclined to seize upon a tax case as an opportunity to declare unconstitutional a legislative enactment standing for nearly 70 years upon the statute books. We have here a long continued acceptance of the statute, coupled with the rule that a court will not declare an enactment of the legislative body invalid without clear proof of its unconstitutionality which, in our opinion, is lacking in this case. We do not regard this provision of the constitution as limiting separate property to that enumerated therein—rather, we regard it as defining a point beyond which the legislature may not encroach upon the separate property of either spouse. There is no mention of Community property in the constitution, although the civil code (Sec. 687) defines it as "property acquired by husband and wife, or either, during marriage, when not acquired as the separate property of either."

Moreover, the Property Settlement Agreement, so far as concerns earnings of petitioner subsequent to April 20, 1932, clearly provides "All property hereafter acquired in whatsoever manner, and all earnings which may be acquired by either of the parties, shall be the sole and separate property of the party so acquiring it, free from all claims, rights or interests of the other." This provision is in complete harmony with Section 169, C.C.

So far as the testimony of petitioner and Gallery to the effect that the written agreement was nullified, almost before the signatures were dry, by an oral agreement, we are of opinion that the Board did not err in declining to find that such agreement was in fact made. The Board saw and heard the witnesses and weighed the testimony; neither process is a function of this court. Cf. Anderson v. Commissioner, 9 Cir., 78 F.2d 636, 639. If a witness testify that two and two makes five or that black is white, we cannot say that the Board must believe him. Phillips v. Commissioner, 283 U.S. 589, 600, 51 S. Ct. 608, 75 L.Ed. 1289; Tracy v. Commissioner, 6 Cir., 53 F.2d 575. So here, the circumstances surrounding the alleged oral agreement, the time, place, and the care with which the written agreement apparently was drawn, all contradict the evidence of petitioner on this point and the Board was justified in concluding that the testimony was incredible. Nor can it be maintained that the oral agreement was executed. So far as the record discloses, the parties conducted their financial affairs, upon the same basis as immediately prior to the written agreement, and the salary of petitioner continued to be handled in exactly the same manner as before by the Equitable Investment Corporation.

The Order of the Board of Tax Appeals is affirmed.