## HARDY v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9887.

Circuit Court of Appeals, Ninth Circuit.

Feb. 18, 1942.

Mackay, McGregor & Reynolds, of Los Angeles, Cal. (A. Calder Mackay, Howard W. Reynolds, Arthur McGregor, and Benjamin W. Shipman, all of Los Angeles, Cal., of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Jouis Monarch, Gerald L. Wallace, and Harry Marselli, Sp. Assts. to the Atty. Gen., for respondent.

Before MATHEWS, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

The Commissioner determined deficiencies in petitioner taxpayer's income taxes for the years 1934, 1935, 1936 and 1937, and the taxpayer instituted three separate proceedings before the Board of Tax Appeals for redetermination of the deficiencies. The proceedings were consolidated for hearing, and the Board sustained the Commissioner's determination. The present petition for review followed.

The proposed deficiencies arise by reason of the ruling of the Commissioner that the income earned by the taxpayer as compensation for personal services during the tax years in question constituted his own separate property, taxable to him in its entirety, rather than community property taxable to him only to the extent of one-half thereof. The answer to the question involved depends upon whether a written property settlement agreement made by the taxpayer with his wife in 1933, which provided that subsequently acquired property should be the separate property of the one acquiring it, remained in force during the taxable years, as the Board found and held, or whether, as claimed by the taxpayer, it was annulled or rescinded by the parties and was superseded by an alleged executed oral agreement, before the taxable years here involved.

There is evidence of a reconciliation and evidence supporting the claim of an executed oral agreement rescinding the written property settlement agreement. On the other hand, there is evidence supporting the Board's conclusions that the property settlement agreement was not affected by the reconciliation.

The agreement itself contains the following provision: " * * * this agreement will continue in full force and effect in the event that their respective differences can be composed and a reconciliation, whether permanent or otherwise, take place."

The agreement from which the above is quoted was entered into September 6, 1933. The reconciliation occurred on October 2; 1933, and pending divorce proceeding filed by taxpayer was dismissed. On November 9, 1936, the wife filed an action against taxpayer for separate maintenance and for a decree declaring that the property settlement be set aside as fraudulently procured. On November 17, 1936, the taxpayer filed an affidavit in the maintenance action stating therein that the property settlement agreement was entered into while they were living separate and apart; that both parties were desirous of definitely arranging their property rights; that throughout the negotiations for the agreement both parties were represented by their own attorneys; that there was no reconciliation between them until after the execution of the agreement; that there was no community property of the parties. On the same day the taxpayer filed a "Husband's Questionnaire" in the suit, in which he stated, in affidavit form, that all of the property rights of the parties had been settled by a just and fair property settlement agreement made on September 6, 1933.

Thereafter, on December 18, 1936, the wife filed an amended complaint in the separate maintenance action, in which it was alleged that upon their reconciliation the parties "mutually agreed in connection with said reconciliation and as a part thereof that said agreement should be and it thereupon was abandoned, abrogated, and deemed by them to be cancelled and to be of no further effect. * * *"

It will be seen that the wife in her separate maintenance action took the identical

position that the taxpayer takes in the instant proceedings. But soon after the filing of this amended complaint the taxpayer moved to strike therefrom the paragraph therein referring to the reconciliation and abandonment of the agreement.

In the meantime, taxpayer's attorney had begun negotiations with the wife's attorney, which resulted in an agreement between the spouses, executed on April 14, 1937, in which it was recited:

"Differences having arisen between the parties thereto as to the validity, effect and performance of the terms of the agreement of September 6, 1933, and it being the intention of the parties hereto to compose such differences, it is agreed that said agreement shall continue in full force and effect * * *."

On April 24, 1937, ten days after execution of this second agreement, the taxpayer filed a complaint for divorce against his wife, in which it is alleged that the parties entered into an agreement on September 6, 1933, settling their various marital property rights; that thereafter the parties became reconciled "to the extent of occupying the same domicile"; that thereafter the defendant wife commenced an action against plaintiff (taxpayer) and prior to its dismissal "the parties modified said agreement of September 6th, 1933, by entering into a new and additional agreement, dated the 14th day of April, 1937"; that the two agreements, of September 6th, 1933, and April 14, 1937 were both entered into at a time when the parties were living separate and apart, and that the parties in entering into said agreements "dealt at arms-length, being separately represented by counsel"; that the two agreements "should be confirmed by this court as constituting the property settlement agreement of the parties". The prayer of the complaint asked for a dissolution of the marital bonds and for confirmation of the two agreements referred to.

It should be noted that throughout the litigation between the taxpayer and his wife, the taxpayer took the position that the 1933 agreement completely settled their property rights. In the wife's separate maintenance action he stated under oath that all property rights of the parties have been so settled, and that there was no community property of the parties.

█ The taxpayer urges in his briefs that the parties in reality abrogated their agreement of 1933, and that "it follows that

nothing that either of the parties, acting alone, might thereafter do or say, could restore the agreement to life. No amount of formality attached to ex parte statements by one of the parties could change that result". The point seems to be that taxpayer by his sworn statements before the State Court in the separate maintenance suit could not change the actual status of the property. That is true, but the fact remains that the taxpayer in the State Court proceedings took the position that the agreement was never in fact abrogated, and his sworn statements to that effect are certainly evidence upon which the Board could base its finding that the 1933 agreement remained in force.

█ The taxpayer also claims that his statements in the separate maintenance proceedings were because of the "publicity angle", which, he states "must be ever present in the mind of a prominent motion picture actor". But again the weight to be given this circumstance was for the Board.

Counsel for taxpayer has argued earnestly and ably his claim that there is not substantial evidence in the record upon which to base the Board's decision. To reverse the judgment we should have to agree with this claim but as it seems to us there is a wealth of supporting evidence.