## JURS v. COMMISSIONER OF INTERNAL REVENUE, and three other cases.

### No. 10734.

Circuit Court of Appeals, Ninth Circuit.

Feb. 12, 1945.

Arthur H. Kent, of San Francisco, Cal. (Kent & Brookes, of San Francisco, Cal., of counsel), Valentine Brookes, of San Francisco, Cal., Edgar B. Stewart, of Oakland, Cal. (Breed, Burpee & Robinson, of Oakland, Cal., of counsel), for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, Newton K. Fox, and Helen Goodner, Sp. Assts. to the Atty. Gen., for respondent.

Before DENMAN, HEALY, and BONE, Circuit Judges.

BONE, Circuit Judge.

These are petitions to review decisions of the Tax Court sustaining the assessment of deficiencies in income taxes of four petitioning taxpayers for the year 1940.

On July 8, 1942, the Commissioner of Internal Revenue mailed a notice of defi-

ciency to the four taxpayers above named, asserting a claimed deficiency in the income taxes of each of them for the calendar year of 1940. The facts in each of these claimed deficiencies stem from the operations of a copartnership composed of the four taxpayers, petitioners herein. On October 5, 1942, and within ninety days after the mailing of the said notices of deficiency, the taxpayers filed petitions with the Tax Court for a re-determination of the deficiencies under the provisions of Section 272 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code § 272. A formal hearing on these petitions was had before the Tax Court, and that Court entered findings of fact and a formal opinion on August 20, 1943. On October 27, 1943, the taxpayers filed a motion for further or additional findings of fact which was denied by order of the Tax Court on October 28, 1943. The final decision of the Tax Court determining deficiencies in tax as found by the Commissioner was entered on December 2, 1943. The appeals of all four taxpayers to the Tax Court were consolidated for hearing before that Court and brought to this Court by petition for review filed March 1, 1944, pursuant to the provisions of Sections 1141 and 1142 of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, §§ 1141, 1142. In this Court, the four appeals for review were likewise consolidated by an order entered March 16, 1944.

In their briefs in this Court, counsel state the question for ultimate decision. Counsel for petitioners says: "Did the wives of petitioners relinquish their community property interest in the distributive shares of partnership income so that those shares became the separate property of the husbands, taxable in entirety to each husband?"

Counsel for respondent Commissioner says: "Did the wives of the taxpayers, by written agreement, waive their community property interest in the partnership earnings and profits of their husbands so that such income was taxable in its entirety to the husbands for Federal tax purposes?"

The parties are thus in substantial agreement on the material issue. In its findings of fact and opinion, set out at length herein, the Tax Court has outlined the salient facts on which its decision rests.

The Tax Court and the Commissioner both considered certain waivers of community interests executed by the wives of the four taxpayers as a waiver of their community interests in the husbands' earnings and a distributive share of the partnership income. This view is the basis of the ruling of the Commissioner and the decision of the Tax Court.

The so-called waivers of the wives were made in connection with a copartnership agreement of their husbands and were attached thereto as a "rider".

In the Tax Court the testimony of the petitioners was to the effect that the "rider" of the wives attached to the said partnership agreement was executed under the following circumstances: The parties believed that since the rider had been necessary to the aims of a previous employment agreement, entered into prior to the execution of the co-partnership agreement, it was likewise necessary to the aims of the partnership agreement, and with that explanation each husband brought the rider home for his wife to sign. In the Tax Court the petitioners introduced testimony to show that each wife intended the rider to prevent her claiming specific partnership assets in the event of the withdrawal or death of her husband, and to have no effect on the present status of the property and not to divest her of her present community interests.

The decision of the Commissioner was that the waivers of their community interests executed by the wives must be taken at their face value and construed according to the broad language used and that the wives by executing these riders to the partnership agreement waived their community interests in the husbands' earnings and distributive share of the partnership income. The Tax Court adopted this view and upheld the assessments, holding that the effect of the rider was to relinquish the wives' community interests in the distributive shares of partnership income, and that the testimony of the parties that the waiver was intended to be given effect only on the death or withdrawal of a partner had to be disregarded because the intention of the parties had to be ascertained from the language of the rider.

The rider of the wives to the copartnership agreement executed during or about the month of May, 1939, was subsequently the subject of attention at the hands of all of the husbands and wives, for on the 29th day of June, 1942, the husbands and wives

joined in executing the following instrument before a notary public:

"To Whom It May Concern

"We the undersigned, hereby swear and affirm that the above waiver, as written and signed, was intended solely for the purpose of making it possible to validate transfers upon the death or withdrawal of a partner in accordance with the partnership agreement to which it is attached.

"It is not to be construed as affecting in anyway whatsoever the community property status which existed between husband and wife before this waiver was signed.

> "Albert E. Jurs
> "Ethel E. Jurs
> "Florence DeCron Jurs
> "Eugene E. Jurs
> "Peter C. Jurs
> "Julie Tanner Jurs
> "R. M. Young
> "Anna C. Young

"Subscribed and sworn to before me this 29 day of June, 1942.

> "(Seal)  Ruth N. Stalder
> "Notary Public in and for County of Alameda, State of California.

"My Commission expires Feb. 18, 1946."

In the hearing before the Tax Court, Mr. Albert E. Jurs, one of the petitioners, was interrogated by counsel for the Commissioner concerning this instrument and was asked if this language was inserted after the tax controversy in this case arose. The answer of Mr. Albert E. Jurs was, "I believe it was, yes."

The petitioners and their wives appeared as witnesses in the Tax Court and were interrogated regarding the intention of the wives and the parties generally in executing the riders mentioned which touched the matter of community interests of the wives. The testimony took a wide range, and the petitioners were questioned regarding their understanding of the probable effect of such an instrument upon the community property rights of the wives and the understanding of the parties regarding such rights. After hearing this testimony the Tax Court, on August 20, 1943, made and entered the following findings of fact and opinion:

"Findings of Fact

"Petitioners are residents of Berkeley, California. They filed their income tax returns for the calendar year 1940 with the collector of internal revenue for the first district of California.

"For the period commencing January 1, 1939, and including the entire calendar year 1940, the petitioners were partners. in and were all of the partners of a manufacturing and sales business doing business under the name and style of Shand and Jurs Co., and their relationships, as partners in such business, were defined by an agreement and articles of co-partnership dated December 31, 1938.

"For a period commencing in 1934 and ending December 31, 1938, such business was operated under the name of Shand and Jurs Co. by Albert E. Jurs as the sole proprietor thereof.

"During the period July 1, 1937, to December 31, 1938, petitioners Peter C. Jurs, Raymond M. Young and Eugene E. Jurs were employed by Albert E. Jurs in the operation of the business under the provisions of an employment agreement which was executed about November 5, 1937. Under such agreement each of the petitioners was to receive a salary and in addition thereto a bonus represented by the profits of the business in excess of salaries. Albert E. Jurs was to receive a stated amount as a rental upon the assets of the business owned by him at July 1, 1937. The bonus earned each year was to be in part divided and in part held for the credit of the several petitioners. It was understood at the time that Peter C. Jurs, Raymond M. Young, and Eugene E. Jurs would eventually have a capital interest in the business.

"It was the desire of Albert E. Jurs that the respective wives of the petitioners should not be allowed to have any voice in the management of the business and with that thought in mind the wives of the petitioners signed a waiver of the employment agreement which certified that each had read the employment agreement and:

"* * * fully understands the same, and being fully convinced of its reasonableness and of the benefits that she will directly or indirectly receive therefrom, does hereby join in, ratify and approve said agreement and each and all of the terms thereof, waiving any community interest to which she might be entitled in and to any property or thing of value made subject to the provisions of said agreement.

"This waiver was signed by the wives at or about the same time as the employment agreement was signed by the petitioners.

"The petitioners entered into an agreement and articles of co-partnership as of January 1, 1939. These articles of co-partnership provided that the shares or interests of the respective partners in the capital, profits and losses of the partnership are vested as follows:

| | |
|---|---|
| Albert E. Jurs | One-third (⅓) |
| Raymond M. Young | One-third (⅓) |
| Eugene E. Jurs | One-sixth (⅙) |
| Peter C. Jurs | One-sixth (⅙) |

"The co-partnership agreement recites that it is the desire of the parties to provide for the acquisition of a deceased or withdrawing partner's interest in the partnership by the surviving or continuing partners. Paragraph 10 of the agreement provides that in the event of the dissolution of the partnership by reason of the death or withdrawal of any of the parties, the interest of such deceased or withdrawing partner should be sold to the surviving or continuing partners, the price to be ascertained by an audit of the books of the partnership, with no value to be placed on the good will of the business. Provision was made for the manner in which the money value of such interest was to be paid to the withdrawing partner or his legal representative. Paragraph 11 of the agreement provides that upon the death or withdrawal of the first party, Albert E. Jurs, his interest was to be transferred to his sons (Peter and Eugene) to augment their partnership interests equally, and in the event of the death or withdrawal of the remaining partners their interests were to be transferred to Albert E. Jurs to augment his interest. Provision was made in paragraph 14 of the agreement for the admission into partnership of another son of Albert E. Jurs, his interest to be acquired through a transfer of a portion of his father's interest.

"The articles of co-partnership were executed by the petitioners during the month of May, 1939. At about the same time the respective wives of the petitioners executed a waiver of similar tenor to that attached to the employment agreement reading as follows:

" 'Each of the undersigned does hereby certify that she has read the foregoing Agreement and Articles of Co-partnership between Albert E. Jurs, Raymond M. Young, Eugene E. Jurs and Peter C. Jurs, dated as of December 31st, 1938, and fully understands the same, and being fully convinced of its reasonableness and of the benefits that she will directly or indirectly receive therefrom, does hereby join in, ratify and approve said Agreement and Articles of Co-partnership and each and all of the terms thereof, waiving any community interest to which she might be entitled in and to any property or thing of value made subject to the provisions of said agreement.'

"Various other documents were executed by the petitioners and their wives, at or about the time the agreement and articles of co-partnership was executed, for the purpose of facilitating the carrying out of the provisions of such articles of co-partnership relating to disposition of assets in the event of the death or withdrawal of the partners.

"In their income tax returns for the calendar year 1940 each of the petitioners reported as taxable income one-half of his distributive share of the profits of the partnership and his wife reported in a separate return as taxable income one-half of her husband's distributive share of partnership income. In the determination of the deficiencies the respondent has held that the entire distributive income of each partner is taxable to him and no part of it to his wife.

"The distributive shares of the partnership income for 1940 constituted the separate property of the partners.

"Opinion

"The question for decision is whether the petitioners are taxable upon the full amount of their distributive shares of the partnership of Shand and Jurs Co. for 1940, or upon only one-half thereof. The respondent has determined in each case that the entire amount of the distributive share of each petitioner in the partnership income is taxable to him alone on the ground that the wife of each petitioner, by the terms of the rider attached to and made a part of the partnership agreement, expressly waived her community interest in the income from the partnership.

"It is the petitioners' contention herein that the waiver signed by the wives of the petitioners was not expected to be given effect except upon the death or withdrawal of a partner; that 'there was no intention, by the execution of the rider, in any way to alter the community status of the partnership interests.'

"The question here is what was the legal effect of the execution of the waiver by

the petitioners' wives? They all read the partnership agreement before executing the waiver. They all understood that they were 'giving up' something in connection with their community property interest. For instance, the wife of Eugene E. Jurs testified as follows:

"Q. At any rate when you signed that agreement, in view of the language 'waiving any community interest' was it your intention that you would claim any community interest thereafter? A. After when?

"Q. After signing the agreement? A. No.

"It is undoubtedly true that neither the petitioners nor their wives foresaw the tax consequences of the execution of the waivers.

"We think that the language of the waiver is not ambiguous. By signing it each wife waived 'any community interest to which she might be entitled in and to any property or thing of value made subject to the provisions of said agreement.' This was a contract between the petitioners' wives and the petitioners. They signed 'being fully convinced of its reasonableness and of the benefits that she will directly or indirectly receive therefrom.' Agreements between spouses in California affecting the status of their income or property, whether separate or community, are given effect for federal income tax purposes. Helvering v. Hickman, 9 Cir., 70 F.2d 985. In Sherman v. Commissioner, 9 Cir., 76 F.2d 810, it was held that the intention of parties to a written agreement must be determined from its terms and testimony of parties that they intended to cover subjects not included therein must be disregarded. So here, we think, that the statements by the petitioners and their wives that the waiver was to be given effect only upon the death or withdrawal of the partner must be disregarded.

"The language employed in the rider follows closely the language of waivers which have been held by the California decisions to dispose of the wife's community interest. See In re Whitney's Estate, 171 Cal. 750, 154 P. 855; In re Wyss' Estate, 112 Cal.App. 487, 297 P. 100. Cf. Security-First National Bank of Los Angeles v. Stack, 32 Cal.App.2d 586, 90 P.2d 337.

"We are of the opinion that the respondent did not err in his determination that the petitioners are liable to income tax upon their full distributive shares of the partnership income in 1940.

"Decisions will be entered under Rule 50."

Subsequently the Tax Court denied a motion of petitioners for additional findings of fact and on December 2, 1943, entered its decision in each of the four cases, as follows:

"Decision

"Pursuant to the Memorandum Findings of Fact and Opinion of the Tax Court in the above-entitled proceeding entered August 20, 1943, the respondent, on September 9, 1943, filed a recomputation for entry of decision. Hearing was had thereon on December 1, 1943, at which time there was no appearance for the petitioner, and the recomputation of the respondent was not contested by the petitioner. Wherefore, it is

"Ordered and Decided that there is a deficiency in income tax due from this petitioner for the calendar year 1940 in the amount of $863.04.

"(Signed)    Charles P. Smith
"Judge.
"Enter:
"Entered Dec. 2, 1943"

The above noted decision went against petitioner Peter C. Jurs, in the amount of $863.04. A similar decision went against Albert E. Jurs for $2,953.61; against Raymond M. Young for $3,219.52 and against Eugene E. Jurs for $648.09, which are the respective amounts claimed by respondent in the notices of deficiency which were sent to each of these taxpayers.

■■■ It is the position of respondent that it is the exclusive function of the Tax Court, not the Circuit Court of Appeals, to weigh the evidence, to draw inferences from the facts, and to choose between conflicting inferences and to declare the result. It is also the contention of respondent that the testimony before the Tax Court fails to support the taxpayers' theory that the wives intended to waive any interest in the partnership assets as such but not in the earnings and income of the partners. We agree with this view. Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 60 S.Ct. 209, 84 L.Ed. 226; Wilkerson Daily Corporation v. C.I.R., 9 Cir., 125 F. 2d 998. And a determination of fact is not to be set aside by a court even if up-

on examination of the evidence it might draw a different inference. Palmer v. C.I.R., 302 U. S. 63, 58 S.Ct. 67, 82 L.Ed. 50.

A reading of the trial record discloses that in the wide range of testimony the petitioners availed themselves of the opportunity to explain the construction they put upon the "riders" signed by the wives and attached to the partnership agreement. Both husbands and wives were given opportunity by the Tax Court to explain their "understanding" of their intent and purpose in signing the waivers mentioned. In light of the fact that testimony was received in the Tax Court concerning the intention of all parties at the time of the signing of the waivers by the wives, it seems to have been the view of the Tax Court that further findings on this subject were not justified, and it accordingly denied the motion of petitioners for additional findings of fact dealing in part with the question of the intention of the parties. The Tax Court was evidently of the opinion that the additional findings proposed would not be relevant to its decision, since all of the understandings of the parties relating to their intentions and the effect of the riders were merged in the rider instrument attached to the co-partnership agreement. The Tax Court made plain that it did not regard the language of the waiver as being ambiguous, but on the contrary a very plain and simple statement of the intention of the parties and that the testimony of the parties that they intended to cover subjects not included in this rider must be disregarded. In this view, the Tax Court included the statement by the petitioners and their wives that they intended the waiver to be given effect only upon the death or withdrawal of a partner. It is obvious from this that the trial court did weigh this testimony and consider its probative value in disposing of this case.

■ In their riders, the wives expressly waived "any community interest" "in and to any property" "or thing of value" made subject to the provisions of the said partnership agreement. Language of this sweeping character can hardly be regarded as ambiguous. The Tax Court was not obliged to accept as true the statements of the petitioners' witnesses regarding their intentions in signing the waivers. It drew a different conclusion from the testimony. The matter of weighing testimony of witnesses who appear before the Tax Court is a matter for the court. It saw and heard the witnesses and weighed the testimony; neither process is a function of this court. Woodall v. C.I.R., 9 Cir., 105 F.2d 474; Hardy. v. C.I.R., 9 Cir., 125 F.2d 863; Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346.

■ It was for the trial court to determine the legal effect of the execution of the waiver. It was an agreement affecting the status of community property, and the cases are numerous to the effect that a husband and wife living in California may by agreement alter their legal relations as to such property. See Boland v. C.I.R., 9 Cir., 118 F.2d 622; VanDyke v. C.I.R., 9 Cir., 120 F.2d 945; Helvering v. Hickman, 9 Cir., 70 F.2d 985; Black v. C.I.R., 9 Cir., 114 F.2d 355; VanEvery v. C.I.R., 9 Cir., 108 F.2d 650. This court held in Sherman v. C.I.R., 9 Cir., 76 F.2d 810, that the intention of the parties to a contract must be determined from its terms. Cf. Boland v. C.I.R., 9 Cir., 118 F.2d 622; Woodall v. C.I.R., 9 Cir., 105 F.2d 474. That is what the trial court did in this case. In Pugh v. C.I.R., 5 Cir., 49 F.2d 76, 79, certiorari denied, 284 U.S. 642, 52 S.Ct. 22, 76 L.Ed. 546, the court rejected an attempt by the scrivener and the interested parties to alter the legal effect of a written instrument by parol evidence. The court said: "The proposal is to give this recorded instrument an effect according to the wish of the parties rather than that attributable to it by law, and thus to control as against the United States the application of the tax laws. While it is sometimes broadly stated that the parol evidence rule has no application to any save parties to the instrument and their privies, * * * yet when an instrument is executed as the final embodiment of an agreement, and becomes the act of the parties, and where the parol evidence is offered merely to vary the legal effect of its terms, the rule operates to protect all whose rights depend upon the instrument though not parties to it. * * * That by some other form of instrument the rights of the United States would have been different is beside the question. The parties abide by this instrument as they made it. The law, and not their wish or understanding, must control its legal effect on the incidence of taxation. The Board did not err in disregarding the parol evidence."

Federal revenue acts designate what interests or rights created by state laws shall be taxed. Black v. C.I.R., 9 Cir., 114 F.2d 355, and cases cited therein. "Rights" stemming from marital contracts of the character here involved create a property status which determines the application of the federal income tax as against separate or community income.

The judgment of the Tax Court is affirmed.